ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Monday, October 18, 2021 4:57:17 PM
CASE NUMBER: 2021 CV 04274 Docket ID: 35823361
MIKE FOLEY
CLERK OF COURTS MONTGOMERY COUNTY OHIO

IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| EARNESTINE SLEDGE<br>2139 Beaver Valley Road, Apt. 11<br>Fairborn, OH 45324<br><br>     Plaintiff,<br><br>    v.<br><br>MACY'S RETAIL HOLDINGS, LLC<br>2700 Miamisburg Centerville Road<br>Centerville, OH 45459<br><br> **Serve also:**<br><br> MACY'S RETAIL HOLDINGS, LLC<br> c/o Corp. Creations Network Inc.<br> (Statutory Agent)<br> 119 E. Court Street<br> Cincinnati, OH 45202<br><br>**-and-**<br><br>RYAN STIDHAM<br>c/o MACY'S RETAIL HOLDINGS, LLC<br>2700 Miamisburg Centerville Road<br>Centerville, OH 45459<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR<br>DAMAGES AND<br>INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

  Plaintiff Earnestine Sledge by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Sledge is a resident of the city of Fairborn, Greene County, Ohio.

2. Defendant MACY'S RETAIL HOLDINGS, LLC ("Macy's") is a domestic-incorporated, for-profit company that conducts business throughout the state of Ohio. The relevant

location of the events and omissions of this Complaint took place was 2700 Miamisburg Centerville Road, Centerville, Ohio 45459.

3. Macy's is, and was at all times hereinafter mentioned, Sledge's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") and R.C. § 4112 *et seq*.

4. Upon information and belief, Defendant RYAN STIDHAM is a resident of Ohio.

5. Defendant Stidham is, and was at all times hereinafter mentioned, an owner, manager, supervisor, and/or agent of Macy's, and as such, an employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") and R.C. § 4112 *et seq*.

6. Within 300 days of the adverse employment actions described herein, Sledge filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), Charge No. 473-2021-00474. ("EEOC Charge").

7. On or around July 27, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Sledge regarding the EEOC Charge.

8. Sledge received the Right to Sue Letter from the EEOC in accordance with 42 U.S.C. §2000e-5(f)(1), which have been attached hereto as Plaintiff's Exhibit 1.

9. Sledge has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

10. Sledge has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**JURISDICTION & VENUE**

11. All of the material events alleged in this Complaint occurred in or around Montgomery County, Ohio.

12. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).

13. Venue is proper pursuant to Civ. R. 3(C)(1), (3), (4), and/or (6).

14. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

15. Sledge is a former employee of Macy's

16. At all times noted herein, Sledge was qualified for her position with Macy's.

17. At all times noted herein, Sledge could fully perform the essential functions of her job, with or without a reasonable accommodation.

18. Sledge is African American, placing her in a protected class for her race.

19. Sledge worked for Macy's as an Asset Protection Detective from March 19, 2019, until Macy's wrongfully terminated Sledge's employment on or about August 24, 2020.

20. As part of Sledge's job, she acted as a plain-clothes officer meant to catch shoplifters.

21. Sledge worked with other detectives from the Asset Protection office and kept tabs on potential thieves by conducting CCTV and floor surveillance.

22. On or around June 20, 2019, Sledge began working with Defendant Stidham (Caucasian).

23. In or around June 2020, a coworker asked Sledge to trail a potential thief.

24. In response, Sledge jokingly and privately said to Stidham in the office, "she's not my boss," and proceeded to trail the potential thief as requested.

25. Sledge intended this comment to be a light-hearted joke aimed at improving rapport with her coworkers.

26. Stidham however, reported Sledge's comment to the coworker, causing unnecessary strife between Sledge and that coworker.

27. Sledge was eventually able to soothe the situation with the coworker but wasted time doing so because of Stidham's unnecessary desire to cause drama and coworker conflict.

28. On or about September 9, 2019, both Sledge and Stidham were suspended after a failed shoplifter apprehension that led to a non-productive detainment. Stidham's actions caused the non-productive detainment.

29. Stidham was permitted to return from suspension on September 13, 2019.

30. Disparately, Sledge was not permitted to return from suspension until October 25, 2019: over a month after Stidham.

31. Stidham was habitually racists towards African American shoppers.

32. Once during an Asset Protection Training Meeting, Stidham states that the "most suspicious behaviors come from Black women."

33. Sledge discussed this discriminatory comment with Operations Asset Protection Manager Meta Collins (a protected complaint), and Collins specifically told Stidham that his assumption was false.

34. Stidham denied making his statement when Collins confronted him despite Sledge and other witnesses confirming that he said it.

35. Later, Sledge learned that Asset Protection Officer Ashton Geswein (Caucasian/ male) was being paid more than her despite Geswein working part-time and Sledge working full-time.

36. This pay-disparity had no lawful basis and seemed to exist for solely discriminatory reasons against Sledge's race and gender/sex.

4

37. Stidham frequently took Sledge's duties for himself, seemingly to interfere with Sledge's ability to perform her essential job duties.
    a. For example, on or about February 16, 2020, a Sunglass Hut employee accidentally gave away a significant amount of money in gift cards: this incident was viewed as a fraudulent activity by the customer.
    b. While working on the case, Sledge was interrupted by Stidham who took the case from her.
38. On or about March 2, 2020, Eugene Bell (Caucasian) took over the Supervisor role from Collins.
39. Shortly after Bell started, Sledge made a protected complaint to him regarding her pay-disparity compared to Stidham and Geswein.
40. Bell told Sledge that he would investigate this situation.
41. On or about August 1, 2020, Store Manager Carol Camp (Caucasian) called Sledge into her office to talk about an incident that had occurred on or around July 19, 2020.
42. On or around July 19, 2020, Sledge had recovered stolen assets from a potential thief.
43. From the CCTV, Sledge saw a woman walking towards the exit with items that she had not paid for.
44. Sledge went out to the store floor to retrieve the items from the woman.
45. Stidham apparently did not like how Sledge performed her job, so he reported her to Camp and claimed that there were inconsistencies with her narrative of events when compared to the security footage.
46. Stidham specifically asked Camp to review the security footage.

5

47. Sledge felt that Stidham's request was done in retaliation against Sledge for her complaints of discrimination against Stidham.

48. During her meeting with Camp, Sledge explained how Stidham often broke protocol by contacting mall security to deal with shoplifters, rather than address the situation himself.

49. On or about August 2, 2020, Sledge made a formal complaint of discrimination to HR Manager Michael Bennett (African American) about Stidham's comments and actions of profiling African Americans.

50. This was another protected complaint of discrimination from Sledge against Stidham.

51. On or about August 10, 2020, Camp approached Sledge regarding her protected complaint from August 2, 2020.

52. During this conversation, Camp explained that she was aware of Sledge's pay disparity issue, and further asked if Sledge had confronted Stidham about her complaint.

53. Sledge and Camp discussed Sledge's complaint and other issues that Sledge was having with Stidham's conduct.

54. On or about August 16, 2020, Sledge sent a follow-up email to Bennett regarding her complaint from August 2, 2020.

55. In this follow-up email, Sledge re-reported the issues regarding Stidham including the earlier discriminatory comment about African American woman being the "most suspicious" category of shoppers.

56. Sledge did not receive a response from Bennett to her email.

57. On or about August 21, 2020, Sledge was scheduled to work the camera and Stidham was scheduled to patrol the floor.

6

58. When Sledge showed up to work, Stidham was already in the security office manning the cameras and was refusing to go out and patrol the floor.

59. When Sledge started viewing the cameras in the security office, Stidham stated he was watching camera 8 (the relevant footage). Sledge replied that she was also viewing that camera at that moment.

60. Stidham then hit the camera controller violently, slammed his chair into the wall, and stormed out of the office.

61. Confused and frightened by Stidham's behavior, Sledge called Bell to report Stidham.

62. Bell told Sledge to file a complaint.

63. Supervisor Lyndsey Kuehl (Caucasian) assisted Sledge in filing the complaint, but Sledge never heard anything back.

64. The next day on or about August 22, 2020, Sledge emailed Camp and Bennett about the situation from the day before. She received no response.

65. On or about August 24, 2020, Camp called Sledge into her office and suspended her for the events of July 19, 2020.

66. Then, later that day Manager Roger Saunwein (Caucasian) called Sledge, told her that she was a "liability", and terminated her employment citing the July 19, 2020 incident.

67. Macy's purported reason(s) for Sledge's employment termination was clearly pretextual.

68. Macy's actually terminated Sledge's employment discriminatorily against her race and gender/sex respectively, and/or in retaliation against her protected complaints.

69. As a result of the above, Sledge has suffered and will continue to suffer damages.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*
### (Defendant Macy's only)

70. Sledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Sledge is African American, and thus is in a protected class for her race.

72. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

73. Defendant treated Sledge differently than other similarly situated employees based upon her race.

74. Defendant's termination of Sledge's employment was an adverse employment action against her.

75. Defendant's purported reason(s) for Sledge's employment termination was pretextual.

76. Defendant actually terminated Sledge's employment due to her race.

77. Defendant violated R.C. § 4112 *et seq.* by terminating Sledge's employment because of her race.

78. Defendant violated R.C. § 4112.02 *et seq.* by treating Sledge differently from other similarly situated employees outside her protected class.

79. Defendant violated R.C. § 4112.02 *et seq.* by applying their employment policies in a disparate manner based on Sledge's race.

80. Defendant violated R.C. § 4112.02 *et seq.* by applying their disciplinary policies in a disparate manner based on Sledge's race.

81. As a direct and proximate result of Defendant's acts and omissions, Sledge has suffered and will continue to suffer damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Macy's only)

82. Sledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. Sledge is African-American, and thus is in a protected class for her race.

84. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

85. Macy's treated Sledge differently than other similarly situated employees based upon her race.

86. Macy's termination of Sledge's employment was an adverse employment action against her.

87. Macy's purported reason for Sledge's employment termination was pretextual.

88. Macy actually terminated Sledge's employment due to her race.

89. Macy violated Title VII by terminating Sledge's employment because of her race.

90. Macy violated Title VII by treating Sledge differently from other similarly situated employees outside her protected class.

91. Macy violated Title VII by applying its employment policies in a disparate manner based on Sledge's race.

92. Macy violated Title VII by applying its disciplinary policies in a disparate manner based on Sledge's race.

93. As a direct and proximate result of Macy's acts and omissions, Sledge has suffered and will continue to suffer damages.

9

### COUNT III: GENDER/SEX DISCRIMINATION IN VIOLATION OF R.C. § 4112 *et seq.*
### (Defendant Macy's only)

94. Sledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

95. Sledge is female, and therefore is a member of a protected class based on her gender.

96. Defendant treated Sledge differently than other similarly situated employees based on her gender/sex.

97. Defendant discriminated against Sledge on the basis of her gender/sex throughout her employment with Defendant.

98. Defendant discriminated against Sledge on the basis of her gender/sex when it paid her less than her male coworkers and refused to remedy the situation.

99. Defendant's termination of Sledge's employment was an adverse employment action against her.

100. Defendant's purported reason for Sledge's termination was pretext.

101. Defendant actually terminated Sledge's employment because of her gender/sex.

102. Defendant's discrimination against and termination of Sledge based on her gender/sex violated R.C. § 4112 *et seq*.

103. As a direct and proximate result of Defendant's conduct, Sledge has suffered and will continue to suffer damages.

### COUNT IV: GENDER/SEX DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Macy's Only)

104. Sledge restates each and every prior paragraph of this Complaint as if it were fully restated herein.

105. Sledge is female and is therefore a member of a protected class based on her gender/sex.

106. Macy's treated Sledge differently than other similarly situated employees based on her gender/sex.

107. Macy's discriminated against Sledge on the basis of her gender/sex throughout her employment

108. Macy's discriminated against Sledge on the basis of her gender/sex when it paid her less than her male coworkers and refused to remedy the situation.

109. Macy's termination of Sledge's employment was an adverse employment action against her.

110. Macy's purported reason for Sledge's employment termination was pretext.

111. Macy's actually terminated Sledge's employment because of her sex/gender.

112. Macy's discrimination against and termination of Sledge based on her gender/sex violation Title VII.

113. As a direct and proximate result of Macy's conduct, Sledge has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

114. Sledge restates each and every prior paragraph of this complaint, as if it were fully restated herein.

115. As a result of the Defendants' discriminatory conduct described above, Sledge complained of the discrimination and disparate treatment she was experiencing by filing protected complaints.

116. Subsequent to Sledge's complaints to management about the discrimination and disparate treatment toward her, Defendants took adverse employment actions against Sledge, including terminating her employment.

117. Defendant's actions were retaliatory in nature based on Sledge's opposition to the unlawful discriminatory conduct.

118. Pursuant to R.C. § 4112 *et seq.* and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

119. As a direct and proximate result of Defendants' retaliatory discrimination against and discharge of Sledge, she has suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Sledge demands from Defendant the following:

a) Issue a permanent injunction:
   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;
   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;
   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;
   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Sledge's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Sledge for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Sledge's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


  /s/ Matthew Bruce
Matthew G. Bruce (0083769)
      Trial Attorney
Evan R. McFarland (0096953)
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff EARNESTINE SLEDGE*

14

**JURY DEMAND**

Plaintiff Earnestine Sledge demands a trial by jury by the maximum number of jurors permitted.

    /s/ Matthew Bruce
Matthew G. Bruce (0083769)